Davis, J.,
delivered the opinion of the court:
The subject-matter of this claim is a contract for carrying the mail upon a “star” route in Louisiana. After the route had been let there were several changes in the service, comprising increase, expedition, and reduction. The various orders directing these changes in speed and amount of service we need not examine, as the case presents but one point, to wit, whether plaintiff is entitled to a month’s extra pay because of the discontinuance of expedited service. The order, dated August 23, 1881 (No. 11767), provided that after the first day of September following the original contract time should be restored, that is, the expedition was abolished, and the pay for expedition was discontinued, without allowance of extra pay upon the deduction. This order was afterwards modified (No. 11911) to take effect September loth.
It is provided as follows in the Postal Regulations (§ 621):
“ The Postmater-General may discontinue or curtail the service on any route, in whole or part, in order to place on the route superior service, or whenever the public interests, in his judgment, shall require such discontinuance or curtailment for any other cause; he allowing, as lull indemnity to contractor, *337 one month’s extra pay on the amount of services dispensed with, and a pro rata compensation for the amount of service retained and continued.” (Postal Laws and Regulations, ch. 3, p. 145, ed. 1879.)
The contract stipulates:
“It is hereby stipulated and agreed by the said contractor and his sureties, that the Postmaster-General may discontinue or extend this contract, change the schedule and termini of the route, and alter, increase, decrease, or extend the service in accordance with the law, he allowing pro rata increase of compensation for any additional service thereby required, or for increased speed, if the employment of additional stock or carriers is rendered necessary; but in case of decrease curtailment, or discontinuance of service as a full indemnity to the said contractor, one mouth’s extra pay on the amount of service dispensed with and a pro rata compensation for the service retained : Provided, however, That in case of increase of expedition the contractor may, upon timely notice, relinquish the contract.”
Upon this regulation and contract standing alone plaintiff would be entitled to judgment.
An affirmative defense is, however, urged for the Government, in whose behalf it is contended that the affidavit sworn to April 2,1879, and then filed with the Postmaster-General by plaintiff, was false, and shows that fraud or misrepresentation was practiced in obtaining the order expediting the service.
The affidavit states that to perform the service “ under the present schedule of sixty-one hours six times a week requires sixteen men and fifty-two horses.” There never was a schedule of sixty-one hours; the then existing schedule, as the Post-Office knew as well as plaintiff, was sixty hours. This is a trifling error, of no moment; probably it was a clerical mistake. It could mislead no one, for the Department had prescribed the schedule, and of course knew it provided a running time of sixty hours.
Further, the affidavit recites: “ Under the present schedule * * * six times a week.” In fact “ the present schedule” (the schedule then in force) provided for three trips a week; this the Post-Office Department knew quite as well as plaintiff, and could not be misled by any affidavit of his in this regard. The affidavit contains a plain statement of an alleged existing fact, as capable of verification in the Post-Office Department in Washington as upon the route in Louisiana. It is not an *338 affidavit as to what was in fact being done in Louisiana, but is an affidavit as to the provisions of a schedule prescribed by the Department in Washington. Is it not more probable that this affidavit, carelessly written, was intended to state that to perform service on the route under the “present schedule” of sixty hours six times a week, instead of three times a week, would require a certain number of horses and men, and then, if the running time were also reduced to forty-eight hours, so many more horses and men would be required ? The project was to change a triweekly service made in sixty hours toa service six times a week made in forty-eight hours; then what more natural than that the contractor should first estimate the number of horses and men required to double the existing service at the same speed, and upon this base his calculation for the greater speed ?
It seems to us that the affidavit is merely faulty in phraseology ; but whether so or not, even if the defendant’s contention be sustained, the affidavit is incorrect only in the statement of a fact then as well known to the defendants as to the plaintiff, to wit, as to what was the existing schedule which the Department had prescribed. In the result there was no wrong done the Government, for substantially the number of horses and men estimated for were necessarily employed in the expedited and increased service. (Griffith v. The United States, 22 C. Cls. R., 165; U. S. v. Voorhees, 135 U. S. R., 550; Parker v. The United States, post.)
Judgment for plaintiff in the sum of $2,266.09.
Counterclaim dismissed.